182688 Good morning, Your Honors. Mr. Rushforth applied for SSI Supplemental Security Benefits on February 14, 2014. This was the onset date of his disability, and the ALJ in this case erred as a matter of law and fact in finding he was not disabled between, excuse me, I'm going to take these off. I can hear myself being amplified. I think I can hear you. I'll put them back on if I need to. Thank you. The ALJ erred here as a matter of law and fact in not giving controlling weight to the opinion of the long-time treating primary care physician, and he discounted his opinion, but he never asked the doctor to explain his opinion. Dr. Caputo testified he could not sit or stand and walk for eight hours a day. That means he's unable to do work. And Dr. Caputo, asides from treating him for his severe spinal impairment, treated him for anxiety and depression with medications, he noted his memory loss. The clinical, the radiological test showed a nerve root displacement. That is more than an impingement. The nerve root was being touched and moved by the herniated disc, and the clinical exam showed many other symptoms, including spasms, reduced mobility, limited range of motion. So this supports not only under the treating physician rule, should the judge err, but it enhances. Treating physician rule does not require absolute adherence. The ALJ noted that the opinion of Dr. Caputo was inconsistent with Dr. Caputo's own examination findings. But it wasn't. I mean, he stated that, but over and over again, Dr. Caputo... And also inconsistent with the views of other doctors. All of the pain specialists and the doctors noted his physical symptoms and his pain and his limitations caused by pain, and that supported his credibility. Dr. Caputo wrote in the medical source statement that Mr. Rushforth was able to sit for only one hour at a time and walk for only 20 feet without interruption. But my understanding was that Mr. Rushforth himself said that with these injections, his back pain has improved significantly, he could walk for a mile, he was walking around the track at his house, and he sat for the duration of the ALJ hearing, which was, I understand, several hours. It was not several hours. Hour and a half? I don't think it was even that long. I was there, but I don't remember. But in any event, the walking is significantly more. And there was also a nine-month period in which he, after one of those injections, that he didn't go for any pain treatment. That seems inconsistent with Dr. Caputo's assessment. So why wasn't the ALJ entitled to discount Dr. Caputo's findings in light of what he himself heard and saw? Sure. The record shows his condition got better and got worse. It showed that he stopped getting pain management because the injections weren't always working. But the nerve root impingement You're saying he stopped getting pain management because the injections weren't working? Yes. I thought it was the contrary. No, I believe if you look at the record, there's testimony that the injections didn't always work, and that's why he stopped. They did work at some moments. Why didn't, if the injection wasn't working, why did he go nine months without seeking pain relief after one of those injections? Well, he tried the pain relief and it didn't work. He was taking medications. Let me, if it's okay, let me move on. Also, his mental health record showed that he had severe impairments. Over and over again, his tangential thinking, his low GAF, his hospitalization for being suicidal was noted. A neuropsych examination showed his auditory memory was in the fifth percentile, and it showed he had difficulties with speech and thought his speech was broken and stumbling. But based on all the, the ALJ erred and the district court erred by not considering all the evidence, that you have to look at the evidence from both sides. And using that standard What did it miss? And look, I'm actually very sympathetic to your client's plight, and I understand that he has now been deemed disabled? Yes. Okay. And, you know, that is what it is, but what is it that they missed? I think, and the second decision, Dr. Caputo, the ALJ gave weight to Dr. Caputo. I think the error here is that there was not enough substantial evidence to dispute what Dr. Caputo said in limiting him based on the nerve root displacement. And that is such a severe impairment that will cause pain, and I think it did support his testimony. And I think the ALJ did, was grudging and was cherry picking in not finding that he was not able to work both from his by not weighing the evidence and by inappropriately applying the Brault test, which is really inaccurate because in the Brault case, that court said you do have to look at all the evidence from both sides to make the determination. And they held, it's a very, the district court held, it's very deferential, and only if no person could, or a person would have to rule the other way. And that is not correct. We really have to liberally apply the Social Security Act. Dr. Caputo treated him for many, many years. You're saying that the substantial evidence test is different in the immigration context than it is in Social Security because of the remedial purpose of the statute? Yes. Yes, I think the Supreme Court has held that. In most administrative law... Where did the Supreme Court hold that? I thought... No, no, it didn't say it was different, but the Supreme Court has always, and the Second Circuit has always applied that you have to weigh the evidence, looking at what supports it and what opposes it in determining whether evidence is substantial. And in this case, I think there really was just a scintilla of evidence. You know, maybe it was enough to beat summary judgment or JNOV, but under the Social Security standards, I don't believe there was enough evidence to dispute what Dr. Caputo said. Just to clarify, in Brault, I thought that we used precisely the same substantial evidence test that we use in other contexts. Well, it's interesting because in Brault, the part of Brault that was quoted by the district court was only part of the ruling. Brault also did say you have to weigh the evidence from both sides, and in this case, the district judge never cited Universal Camera, never cited Monger, and all of the Second Circuit precedents that hold you have to weigh the evidence, and that's what the district court and this court has to do. And I think the district court did not weigh the evidence, but the nerve root displacement is such strong evidence supporting pain, I don't think the rest of the evidence is substantial. We have your argument, and you've reserved some time for rebuttal. We'll hear from your colleague, Ms. Pollack. May it please the Court, Catherine Pollack, for the Commissioner of Social Security. The ALJ's decision in this case was supported by substantial evidence without legal error and should be affirmed. To respond initially to appellant's assertions regarding the standard of review, the Supreme Court recently reaffirmed the standard of review in Social Security disability appeals, and I quote, and whatever the meaning of substantial in other contexts, the threshold for such sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means and means only such relevant evidence as a reasonable mind may accept as adequate to acknowledgment that the substantial evidence standard of review is a deferential one. We've got that. So the question is, Dr. Caputo, and to me also the question is, what do we make of the fact that, what is it, two years later, there was a determination by another ALJ that he was in fact disabled, and based on largely the same quantifiable objective evidence? So I would dispute that the evidence was similar. I think there were at least three new opinions that were submitted in the second case. Moreover, there were also additional, I think, x-rays and there were additional treatment notes that were submitted. Furthermore, it's notable that on the subsequent appeal, he was found disabled a year and a half after the end of the relevant period in this case, which also reduces the primitive value of the subsequent favorable determination. What was the determination as to what he was able to do? So you heard me. You know, I read through all of this, and I'm no expert, so I defer to experts. But in my own reading, I thought, what is this person able to do with the mental and physical impairments that are described by all the doctors, frankly? Well, in this case, we particularly have Dr. Wasseff's opinion that he only had moderate limitations with respect to activities including walking and standing, sitting, etc. And this court has found that such limitations are compatible with light work. Additionally, we have his own testimony. What light work? He's got suicidal thoughts. He's got a whole list of mental, and I'm not saying that, you know, one side wins or loses, but I find it troubling because I read through it, and I was trying to imagine what light work would he be able to perform, and that others would want him to perform. Right. If you look at the record in this case, the ALJ gave very thorough consideration to all of the evidence, and as the ALJ noted, and as the appellant himself noted at the hearing, while he did have an episode where he was hospitalized for psychiatric reasons, he subsequently improved significantly. He noted at the administrative hearing that despite his psychiatric condition, he was able to do the things he needed to do, and he reported that he engaged in a wide range of activities. He went to New Jersey to help his parents and socialize. He went to the library regularly. He attended meetings. He was able to cook, clean, shop for the things he needed, etc., which shows a pretty high degree of functioning. He shouldn't be around fumes, so the recommendation is he can get a job as a parking lot cashier. I think it's concentrated exposure, and I think that being in this case considered . . . I mean, a parking lot is suffused with gasoline fumes. Right. I wouldn't be able to say specifically, but I know that the vocational expert did consider that and identified two other jobs, one of which was in Usher, wherein I don't believe fumes would be an issue. As I'm sure the Court is aware, the commissioner only has to find one job that the appellant can perform. Furthermore, with respect to the examination findings, this Court has also found that similar normal examination findings, such as those that were noted by Dr. Caputo in his reports, as well as other providers, including Dr. Wassef, and including such as that he had normal strength in his extremities, a normal gait. As we discussed, he was walking on a street like Raising Test. All of these were supportive of the ALJ's ultimate finding. Could you address the Dr. Caputo question? From what I saw, the ALJ didn't apply what we call the Burgess factors, or didn't do so explicitly in determining whether the physician's opinion is entitled to controlling weight, and we've called that recently a procedural error. Why shouldn't we remand for the district court to actually be orderly about its determination with regard to Dr. Caputo, who actually, after all, had a long treating history with Mr. Rushforth? I believe that court might be referring to a recent decision in Estrella. Estrella and Barnhart, yes. Correct. In this case, unlike that case, the ALJ thoroughly summarized the treatment notes and treatment history of the doctor, and was fully aware of it, and that he was a treating provider. He also fully documented evidence on both sides. I believe in Estrella, the ALJ only cited two very limited findings. Here, the ALJ fully described the evidence of record and really explained what he relied upon in making his finding. You're saying even though he wasn't explicit about the Burgess? Right. A review of the record very much shows the ALJ's analysis and the weight he gave and how he considered the evidence of record both in favor and opposed to a disability finding. And here, the ALJ's finding was supported by all of those. Additionally, with respect to his mental limitations, the ALJ considered that there were significant opinions, including that of the consultative examiner, Dr. Melker, who found that he could do simple work, had only mild to moderate limitations in other areas. Additionally, the ALJ's finding was consistent with the forms reports given by his treating social workers, which also supported that he had, at most, moderate limitations, which are all consistent with the detailed finding that the ALJ gave. What in the record, apart from Dr. Caputo, speaks to his ability to stand or walk, and in particular, that he had the capacity to stand or walk for six hours of an eight-hour work day? I wasn't sure I saw anything. So in support of that was the physical examination findings of Dr. Wasif and his opinion that he had only moderate limitations, which I believe this court held in white was supportive of a finding for light work. However, it wasn't just that. It was, again, his acknowledgment that he could walk around a track for exercise. He could walk up to a mile. He acknowledged that he could lift up to 25 pounds at the hearing. All of these were supportive of a range of light work. So my problem is credibility works both ways. If I told you that I could run a marathon in two hours, okay, maybe that's what I believe, but I couldn't do it. So it seems to me that he has got these mental impairments. And in this record, there's a finding that he's only partially credible. Is that right? Right. That he was credible to the extent that he was limited and the ALJ gave due consideration and gave very detailed specific limitations as a result of his mental impairments and physical impairments. But to the extent that he was claiming a complete disability and complete inability to work, he found that consistent with other evidences he outlined, including his activities, et cetera, the opinions of certain treating providers. I just wanted to just make one final point with respect to the MRI finding. I would just note that the ALJ found that degenerative disc disease, lumbar radiculopathy, and lumbar facet arthropathy were severe impairments, but an MRI itself doesn't speak to function. And here, the ALJ considered that a patient had many normal physical examination findings which were relevant to his function. And in sum, the ALJ thoroughly considered the evidence of record. You may, and look, your points may be all well taken. How much should we, so now that he's been deemed disabled, it was as of what time? The date itself was, I believe it was a year late, it was over a year and a half later. 2017. Yes. So we're talking about what period of time that he's seeking? The period of issue was from February 2014 to November 2015. Unless the court has any other questions, we rest in our brief. Thank you. Mr. Schneider? Thank you. Thank you. I will, let me try to address those comments. There's no evidence that his conditions got worse. The reason the second period was a year and a half or two later is because he didn't reapply. And SSI is not retroactive, so unfortunately there's a period, an interregnum in between. Your colleague said, though, that there were three new opinions in the second case in additional x-rays. Is that correct? Well, but the x-rays didn't make a difference. The MRI was the same, and the MRI is really the gold standard. There was nothing new regarding his spine. With respect to the three new opinions? I'm sorry? You referred to three new opinions as well. There may have been new opinions, but the second ALJ gave great reference. If you look at the second opinion, you'll see that. Was it the same MRI? Yes. Yeah. His condition did not get better, and it didn't get worse. It was really about the same. If you believe his testimony that he could lift 25 pounds or would walk... It's not a matter of whether we believe it. No, but let's say if the ALJ believed those things, why wouldn't you then believe his testimony about his limits? I mean, if he was not being credible, he would have said, I can't lift... The problem is we have a record here. Yes. Now, there is another record out there that is later, but we not only don't have a duty to review it, but we have no occasion to review it. It's an irony, for sure. The second decision is not determinative. It's just instructive. I'm not arguing that that's determinative. Moderate limitations, mentally and physically, do not allow a person to do full-time, sustained, sedentary, or light work. Even if you go with what Dr. Wassef said or what Counselor Gossie said, having moderate limits would not allow you to work on a full-time, sustained visit basis. Being able to do some activities, going to AA, going to church, those were all held against him, and we have a lot of case law that you don't have to be a total invalid, and he stopped doing those activities because he couldn't. The ALJ erred in this case by finding his mental hospitalization to be remote, and it wasn't. It was during the period in question. If you look at the record and read his testimony, you'll see that it was often disjointed, that he thought tangentially. He's not the kind of person that could ever get a job as an usher or whatever... Or that someone, or that an employer would want to employ. I think that that's your... Well, to maintain employment. He wore, his counselor suggested to feel comfortable he wear a comic character cape, because he wanted to be a comic book writer, and then he kept wearing it around town. Is that... Mr. Apropos, what you said earlier in answer to Justice Jacobs' question, is there a case in which we have remanded a matter back to the ALJ in light of a subsequent favorable decision? I know the district courts have. I don't have a site for you. We have not done that. I don't know, but certainly it is a factor to be considered. Thank you very much. Thank you very much. We'll reserve the decision.